Action by Louis Nordlinger against Adolph Anderson, Charles A. Muns, Clinton S. Harris, and Charles Muns, to set aside an assignment for the benefit of creditors, made by Adolph Anderson and Charles A. Muns, as copartners, to defendant Harris, in which assignment Charles Muns, father of Charles A. Muns, was a preferred creditor. The evidence at the trial showed the following state of facts: When the partnership was formed Charles A. Muns contributed as his share of the capital $3,000, which he had borrowed from his father, and Anderson contributed the assets of his former business. It was afterwards ascertained that these assets were worthless, and thereupon the partners gave Charles Muns a firm note for $3,000 in payment of his loan to Charles A. Muns. In addition to this note the firm also became indebted to Charles Muns for money lent from time to time. Plaintiff argued that this note was a fraud on the firm creditors, and that Charles Muns was not a *bona fide* creditor of the firm, so far as this note was concerned. The day before the assignment nearly all the firm funds in the bank were withdrawn and paid to Charles Muns in part satisfaction of his claim. Plaintiff's complaint was dismissed at the hearing, and he appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and MACOMBER, JJ.

*Fred W. Hinrichs,* for appellant. *James M. Hunt,* for respondent Charles Muns. *John H. Corwin,* for respondent Harris.

MACOMBER, J. The only question before us is one of fact. The learned judge at the trial, evidently upon an attentive examination of the evidence, has dismissed the complaint upon the merits. The ground upon which it was sought to set aside the assignment made to the defendant Harris by the defendant Anderson for the benefit of creditors was that the respondent Charles Muns was preferred in the sum of $2,000 more than was the actual indebtedness of the assignor to him, and that there had been an unlawful and fraudulent disposition of funds of the assignor immediately prior to the assignment. The clear weight of the evidence shows that both of these grounds of assault upon the assignment are untenable. It is conclusively established that the indebtedness of the firm to Charles Muns was $9,000, being $2,000 in excess of the sum for which he was preferred in the assignment. Several unimpeached and apparently just witnesses show that the other claims against the validity of the assignment were untenable, and that there was no unlawful payment of funds of the firm preceding the assignment. Against the evidence upon which the learned judge at special term has rested his decision there is substantially the unsupported testimony of Adolph Anderson alone. His deposition was taken by commission at New Orleans. It appeared upon the trial that such testimony was given under written memoranda or directions sent to him in behalf of the plaintiff before his deposition was taken. Had this been known before trial it would have been sufficient to suppress the deposition. On the whole, we are inclined to think, when such fact was made to appear at the trial, the judge had the power then to suppress it. But this proposition is unimportant now, in view of the final disposition that was made of the case by him. The judgment should be affirmed, with costs. All concur.

---

### HOLMES, BOOTH & HAYDENS v. WILLARD.

*(Supreme Court, General Term, First Department. May 24, 1889.)*

1. CORPORATIONS—LOANS—ULTRA VIRES.
    It is not *ultra vires* for a trading corporation to lend money to one dealing with it, so as to enable the borrower to carry on the transactions.
2. SAME—AGENTS—AUTHORITY.
    Where a trading corporation, which has been in the habit of assisting persons with whom it does business, allows its general manager to transact all its business,

and he indorses in the corporate name the note of one with whom the corporation is dealing, causes the note to be discounted, and pays the proceeds to the maker, he is not liable to the corporation, though it is obliged to pay the note.

.3. SAME—ACCOMMODATION INDORSEMENT.
.Such transaction is a loan of money by the corporation, and not an accommodation indorsement.

Appeal from circuit court, New York county.

Action by Holmes, Booth & Haydens, a corporation, against Samuel H. Willard. Plaintiff appeals from a judgment dismissing its complaint.

Argued before VAN BRUNT, P. J., and CULLEN, J.

*William H. Harris,* for appellant.   *Marshall P. Stafford,* for respondent.

VAN BRUNT, P. J.   This action was brought by the plaintiff, a manufact- ·uring company, against its former treasurer, to recover damages for the in- .dorsement made by him in plaintiff's name of a promissory note which he negotiated to an innocent purchaser for value.   The defendant at the time of indorsing the notes in question, and for five years prior thereto, was the .treasurer and general manager of the plaintiff.   As such general manager he was allowed to exercise his discretion in managing plaintiff's business.   Dur- ing all the years that defendant was plaintiff's manager the plaintiff's board ·of directors left the direction and management of the business to his judg- ment, and habitually held no meetings except an annual meeting.   The plain- .tiff was organized as a corporation under the laws of Connecticut, for the purpose of manufacturing and dealing in all kinds of brass, copper and Ger- man silver goods, plated ware, and all articles composed wholly or in part ·of copper, brass, and German silver, and all articles composed in whole or in part of metal, and to do such other things as are incident to the transac- tion of said business, and to exercise such mercantile powers as might be con- ·venient and necessary for the prosecution of said business.   It had been the practice of the plaintiff to extend financial assistance to parties with whom it had business relations.   In fact, the whole management of the business was :intrusted to the discretion of the defendant during this time.   The defendant having upon behalf of the plaintiff made a contract with the Forest City ·Carbon Manufacturing Company, by the terms of which the plaintiff was to receive and sell the greater part of the carbon manufactured by that company for prices to be determined by the market, the said company, being in want ·of facilities for the purpose of increasing its manufacture of carbon, applied .to the defendant as representing the plaintiff for assistance, and made its promissory note for $10,000, payable to the order of the plaintiff, which note was indorsed by the defendant in the plaintiff's name, and was procured to be discounted by him, and the proceeds of the discount handed over to the For- ·est City Carbon Company.   Upon the maturity of the note the company was unable to pay the same, and gave notes renewing the same.   The subsequent ·events attending the notes it is not necessary to mention, except the fact that finally the plaintiff was compelled to pay the same, and this action was brought to recover the damages sustained thereby, upon the ground that the indorsement of the note was *ultra vires* of the plaintiff, and that the defend- .ant was liable upon the indorsement, because not authorized to make the same.

A very brief examination of the legal situation of the parties to this trans- .action shows that the claim upon the part of the plaintiff that this note was .an accommodation indorsement by its treasurer, and therefore *ultra vires,* is not well founded.   The transaction, as it took place between the carbon com- pany and the defendant, representing the plaintiff, was simply a loan of money. The carbon company gave its note, payable to the order of the plaintiff, and the plaintiff loaned the money upon the note.   How it got the money was immaterial,—whether by having the note discounted upon its own credit or ·otherwise does not alter the relations of the parties.   It was a loan made be-

tween the plaintiff and the carbon company, by and through its treasurer, and there is nothing in the case going to show that there was any accommodation indorsement, or anything of the sort. The question raised here, therefore, is whether a loan of money by a corporation is *ultra vires*.

We have not been referred to any authority or principle under which such a transaction can be held *ultra vires* of a corporation, particularly a trading corporation which has the right to exercise such mercantile powers as may be convenient and necessary for the successful transaction of its business, which clearly gives it the authority to extend mercantile facilities to the persons dealing with it if in its judgment it thinks it for the benefit of its business so to do. The transaction, therefore, between the plaintiff and the carbon company was in no respect *ultra vires*.

But it is claimed that the defendant had no power to make such use of the credit and money of the corporation. It is sufficient to say that the evidence shows conclusively that it had been the practice of this corporation to lend money and extend financial assistance to parties with whom it had business relations. It is true that it is claimed that the only evidence of any such course is that the defendant during his administration often gave financial assistance to customers, but that such acts were not reported to the board of directors. But the evidence fails to establish this proposition. It is true that the subsequent treasurer says that such accommodations were not extended to any but to customers by him, but there is no evidence but that it had been the practice prior to this time to give financial assistance to others than customers strictly speaking, in the shape of extending their paper as is claimed to have been only done by Mr. Wayland. And it appears without contradiction that it was not customary for the board of directors to give the manager directions in these matters; that he always exercised the authority; and it was not customary to bring it before the board of directors. In other words, the whole details of the management of the corporation were, as above stated, committed to the general manager. Under this state of things it is difficult to see how the defendant can be held liable, because of his action, in conducting the business in precisely the same way in which it had heretofore been done, and extending aid to persons with whom the plaintiff had dealings. If corporations choose to place the whole of the management of their business for the purpose of expedition in the hands of a single individual, and give him a general authority to act as under the circumstances may seem best to him, unless absolute fraud is shown on his part, there seems to be no ground upon which a right of recovery can be had against him for any such acts. Certainly a mere mistake in judgment does not render him liable. Trading corporations are necessarily managed in a more informal way than those of a different character. They are voluntary copartnerships, having a right of survivorship, not dissolved by reason of the death of any one of the parties in interest, and a director or officer or manager with whom is intrusted all the business of the corporation can exercise all the powers which the board of directors could exercise under the same circumstances in the general management of the corporation business. *Hoyt* v. *Thompson*, 19 N. Y. 209. Even if we concede that the corporation had no power to lend its money, yet when it is found that it had been in the habit of so doing, and that it had been the course of business of the corporation, certainly an officer cannot be held liable simply because he has continued the practice. We fail to see any ground upon which the defendant can be held liable for this step in the management of the plaintiff's business, and the judgment should be affirmed, with costs.